**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**ASHLAND DIVISION**

IN RE

HNRC DISSOLUTION CO.                                          CASE NO. 02-14261
f/k/a HORIZON NATURAL                               CHAPTER 11
RESOURCES CO., *et al.*[1]

DEBTOR                                                              JOINTLY ADMINISTERED

**MEMORANDUM OPINION**
**AND ORDER DENYING MOTIONS**

This matter is before the Court on Alliance WOR Properties, LLC's Motion for Enforcement of Sale Order and Confirmation Order [ECF No. 8541 ("Enforcement Motion")] and Illinois Methane, LLC's Motion for Determination of Jurisdiction, to Abstain, and to Dismiss Contested Matter [ECF Nos. 8542 & 8553 (collectively, "Jurisdiction Motion")[2]].

---

[1] The Debtors are the following entities: 17 West Mining, Inc., Aceco, Inc., Americoal Development Company, Appalachian Realty Company, Ayrshire Land Company, Bassco Valley, LLC, Beech Coal Company, Bentley Coal Company, Bluegrass Coal Development Company, Bowie Resources Limited, Cannelton Inc., Cannelton Industries, Inc., Cannelton Land Company, Cannelton Sales Company, CC Coal Company, Coal Ventures Holding Company, Inc., Dunn Coal & Dock Company, East Kentucky Energy Corporation, Employee Benefits Management, Inc., Employee Claims Administration, LLC, EnerZ Corporation, Evergreen Mining Company, Fairview Land Company, Flanary Branch Coal Co., Inc., Franklin Coal Sales Company, G.E.C., Inc., Grassy Cove Coal Mining Company, Hayman Holdings, Inc., Heritage Mining Company, Highland Coal, Inc., HNR Mining, Inc., Horizon Blue Creek Coal Company, Horizon Finance Corp., Horizon Natural Resources Company, Horizon Natural Resources Holding Company, LLC, Horizon Natural Resources Sales Company, Horizon NR, LLC, IkerdBandy Co., Inc., Kanawha Corporation, Kentucky Prince Mining Company, Kermit Coal Company, Kindill Holding, Inc., Kindill Mining, Inc., Leslie Resources Management, Inc., Leslie Resources, Inc., McCoy Coal Company, Meadowlark, Inc., Mega Minerals, Inc., Mid-Vol Leasing, Inc., Midwest Coal Company, Midwest Coal Sales Company, Mining Technologies, Inc., Mountain Coals Corporation, Mountain-Clay Incorporated, Mountaineer Coal Development Company, Old Ben Coal Company, Phoenix Land Company, Premium Processing, Inc., Princess Beverly Coal Company, Princess Beverly Coal Holding Company, Inc., Pro-Land, Inc., Red Ridge Mining, Inc., River Coal Company, Inc., Roaring Creek Coal Company, RP Terminal, LLC, Shipyard River Coal Terminal Company, Skyline Coal Company, Straight Creek Coal Resources Company, Sunny Ridge Enterprises, Inc., Sunny Ridge Mining Company, Inc., Tennessee Mining, Inc., Tucker Mining Company, Turris Coal Company, West Virginia-Indiana Coal Holding Company, Inc., Wyoming Coal Technology, Inc., Zeigler Coal Holding Company and Zeigler Environmental Services Company.

[2] Methane amended its Motion for Determination of Jurisdiction, to Abstain, and to Dismiss Contested Matter on March 15, 2018. The amendment does not change Methane's prior arguments, but merely adds the argument that this Court lacks personal jurisdiction. Thus, the Motion and Amended Motion are referred to collectively.

Illinois Methane, LLC ("Methane") filed a Response [ECF No. 8543] to the Enforcement Motion and Alliance WOR Properties, LLC ("Alliance") filed a Reply [ECF No. 8551]. Alliance also filed Responses to Methane's Jurisdiction Motion [ECF Nos. 8552 & 8559].

A final hearing was held on March 28, 2018, and the matter was taken under submission. For the reasons stated herein, the Court finds it has subject matter and personal jurisdiction to decide whether Methane received notice of the Sale and Confirmation Orders (as defined herein) sufficient to satisfy constitutional due process and will exercise that jurisdiction. Further, the Court finds Alliance did not meet its burden to prove Methane was an unknown party to Debtor Old Ben Coal Company and its affiliates; and thus, publication notice of the sale and confirmation process did not satisfy constitutional due process as to Methane. Alliance's Enforcement Motion will be denied.

## Background and Procedural History

Old Ben Coal Company ("Old Ben") and 160 affiliates (collectively, "Debtors") filed voluntary chapter 11 petitions in November 2002. The individual bankruptcy cases were jointly administered under the lead case styled *In re Horizon Natural Resources Company et al.*, Case No. 02-14261 ("Bankruptcy").

In 2004, Debtors sold substantially all of their assets pursuant to a court-approved auction process. As part of this process, Old Ben sold its interest in a coal reserve located in Hamilton County, Illinois ("Reserve") to LCC Illinois, LLC (a/k/a Lexington Coal). Following some intermediate transfers, Alliance acquired the Reserve in September 2011.

On May 8, 2017, Methane filed suit against Alliance and others in an Illinois state court, seeking to collect based on an interest in the coalbed methane gas rights in the Reserve. Methane alleges that on June 12, 1998, several years prior to the Bankruptcy, Old Ben conveyed all of the

2

coalbed methane gas rights in the Reserve to Methane via deed ("Old Ben Deed") while retaining the coal rights. According to Methane, the Old Ben Deed provides that Old Ben will pay Methane a "delay rental" obligation if Old Ben's coal mining activities make the Reserve unavailable for methane gas production. Methane's rights under the Old Ben Deed are collectively referred to herein as its "Interest." The parties disagree as to the nature of the Interest; however, they agree the Interest derives solely from the Old Ben Deed. Methane seeks to enforce and collect on its Interest through the state court litigation.

On September 15, 2017, Alliance moved to reopen the Bankruptcy to allow it to file the Enforcement Motion seeking interpretation and enforcement of two orders: (1) Order Pursuant to 11 U.S.C. §§ 105(a), 362, 363, 365, 1123, and 1146(c) and Fed. R. Bankr. P. 2002, 6004, 6006 and 9014: (A) Approving Asset Purchase Agreements, (B) Authorizing Sale of Substantially All Assets Free and Clear of All Liens, Claims, Interests and Other Encumbrances, and (C) Authorizing Assumption and Assignment of Certain Agreements [ECF No. 4085] ("Sale Order") and (2) Findings of Fact, Conclusions of Law and Order Confirming the Debtors' Third Amended Joint Liquidating Plan under Chapter 11 of the Bankruptcy Code [ECF No. 4089] ("Confirmation Order"). The Bankruptcy was reopened on December 19, 2017.

Alliance filed the Enforcement Motion on January 22, 2018. Alliance contends it acquired the Reserve free and clear of any liens, claims, interests, or encumbrances pursuant to § 363(f)[3] and without liability for Methane's Interest. Alliance asks the Court to enjoin Methane's claims against it because Methane's Interest was extinguished by entry of the Sale

---

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. References to the Federal Rules of Bankruptcy Procedure appear as "Bankruptcy Rule ___." References to the Federal Rules of Evidence appear as "Evidence Rule ___."

3

and Confirmation Orders. Methane opposes the requested relief and filed the Jurisdiction Motion contending the Court lacks subject matter and personal jurisdiction over a dispute between two non-debtor parties involving state law property rights. However, Methane further argues that if jurisdiction exists, the Court must abstain because state law issues predominate. Finally, Methane contends its Interest was not extinguished by the sale and confirmation process because the publication notice of the Sale and Confirmation Orders does not satisfy constitutional due process as to Methane.

Following extensive briefing and a preliminary telephonic hearing held on March 19, 2018, the scope of the final hearing was limited to three threshold issues: (1) jurisdiction; (2) abstention; and (3) due process.[4] At the final hearing, the parties were provided an opportunity to present evidence on these issues. Alliance chose to stand on its papers. Methane introduced the Affidavit of George S. DeMier [ECF No. 8533] ("DeMier Affidavit") and it was admitted without objection. Methane further moved to introduce 22 exhibits [ECF Nos. 8560, 8570, 8571] (collectively, "Methane Exhibits"), which are admitted by separate order. The Court heard the arguments of counsel and took the Motions under submission.

## Analysis

I. **Methane's Jurisdiction Motion.**

   A. **The Court has Subject Matter Jurisdiction to Interpret Its Own Orders.**

Bankruptcy courts are courts of limited jurisdiction. In addition to jurisdiction over a bankruptcy case, a bankruptcy court may exercise jurisdiction over a proceeding that: (1) arises under title 11; (2) arises in title 11; or (3) is related to a case under title 11. 28 U.S.C. § 1334.

---

[4] If resolution of these issues did not fully decide the pending motions, further hearings would have been held. [ECF No. 8557.]

The first category, proceedings arising under title 11, describes the proceedings from which a claim is made under a provision of title 11. The second category, proceedings arising in title 11, are those administrative matters that are not based on any right expressly created by title 11 but would not exist outside of the bankruptcy. The third category, proceedings related to a case under title 11, refers to a proceeding where the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Hughes-Bechtol, Inc. v. Constr. Mgmt., Inc. (In re Hughes-Bechtol, Inc.)*, 132 B.R. 339, 342 (Bankr. S.D. Ohio 1991).

A bankruptcy court has "arising in" jurisdiction to interpret and enforce its own sale and confirmation orders. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *Harper v. Oversight Committee* (*In re Conco, Inc*.), 855 F.3d 703, 711 (6th Cir. 2017); *In re Gawker Media, LLC*, 581 B.R. 754, 760 (Bankr. S.D.N.Y. 2017); *In re Motors Liquidation Co.*, 514 B.R. 377, 380 (Bankr. S.D.N.Y. 2014). The determination of the rights created or extinguished under a sale or confirmation order is a core matter pursuant to 28 U.S.C. § 157(b). *Olson v. Frederico (In re Grumman Olson Indus., Inc*.), 445 B.R. 243, 248 (Bankr. S.D.N.Y. 2011); *Quesenberry v. Chrysler Group LLC*, Civil No. 12-48-ART, 2012 WL 3109431, at *4 (E.D. Ky. July 31, 2012).

Methane argues that the Court lacks "related to" jurisdiction because resolution of the dispute will have no conceivable effect on the administration of the bankruptcy estate. *See Michigan Emp't Sec. Comm'n v Wolverine Radio Co., Inc. (In re Wolverine Radio Co*.), 930 F.2d 1132, 1141 (6th Cir. 1991) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987)); *Spradlin v. Pikeville Energy Grp., LLC*, Civil No. 12-111-ART, 2012 WL 6706188, *6 (E.D. Ky. Dec. 26, 2012). This argument misses the point. The Court has "arising in" jurisdiction and that is sufficient to adjudicate the limited issue before the Court. *See In re Motors Liquidation Co.*, 514 B.R. at 381 ("'Related to' jurisdiction has nothing to do with the

5

issues here. Bankruptcy courts (and when it matters, district courts) have subject matter jurisdiction to enforce their own orders in bankruptcy cases and proceedings under those courts' 'arising in' jurisdiction."). *See also Legal Xtranet, Inc. v. AT&T Mgmt. Serv., L.P. (In re Legal Xtranet, Inc.)*, 453 B.R. 699, 705 n.1 (Bankr. W.D. Tex. 2011); *Simmons v. Johnson, Curney & Fields, P.C. (In re Simmons)*, 205 B.R. 834, 843 (Bankr. W.D. Tex. 1997) (arguing subject matter jurisdiction exists in dischargeability actions, arising under title 11, and the interpretation of enforcement of a sale orders, arising in title 11, without "related to" jurisdiction).

In sum, this Court has subject matter jurisdiction to interpret and enforce its Sale and Confirmation Orders. These are core matters pursuant to 28 U.S.C. § 157(b)(2)(A), (L), (N), (O) and this Court may enter final orders as to the issues raised herein.

### B. The Court May Exercise Personal Jurisdiction Over Methane.

Methane next argues that the Court lacks personal jurisdiction. The requirements for personal jurisdiction are found in Bankruptcy Rule 7004(f), which provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

FED. R. BANKR. P. 7004(f). Therefore, the Court has personal jurisdiction over Methane if: (1) the Court has subject matter jurisdiction; (2) Methane received proper service according to Bankruptcy Rule 7004; and (3) the exercise of such jurisdiction is consistent with the Fifth Amendment. *Tipton v. Adkins (In re Tipton)*, 257 B.R. 865, 870 (Bankr. E.D. Tenn. 2000).

The Court has subject matter jurisdiction for the reasons stated above.

Alliance's service of the Enforcement Motion on Methane was proper under Bankruptcy Rule 7004. The Enforcement Motion initiated a contested matter. Contested matters are governed by Bankruptcy Rule 9014. Bankruptcy Rule 9014 requires service "in the manner provided for service of a summons and complaint by Rule 7004." FED. R. BANKR. P. 9014(b). Methane is a limited liability company. Appropriate service on a limited liability company requires mailing the Enforcement Motion by first class mail:

> to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

FED. R. BANKR. P. 7004(b)(3). The certificate of service on the Enforcement Motion represents that Methane was served by first class mail at 123 S. 10th St., Suite 310, Mount Vernon, IL 52864 and to the attention of James L. VanWinkle at 301 S. Jackson Street, P.O. Box 337, McLeansboro, IL 62859. Methane does not contest, and the DeMier Affidavit confirms, that VanWinkle is its registered agent for process and the addresses listed on the certificate of service are correct. Alliance thus properly served Methane pursuant to Bankruptcy Rules 9014 and 7004.

Finally, exercising jurisdiction over Methane is consistent with the Fifth Amendment. In determining whether a bankruptcy court's jurisdiction is constitutionally sound, courts analyze the due process requirements pursuant to the Fifth Amendment. *In re Tipton*, 257 B.R. at 871. Under the Fifth Amendment, bankruptcy courts can constitutionally exercise personal jurisdiction over any person or entity within the sovereign territory of the United States. *Id*. This nationwide service of process is specifically set out in Bankruptcy Rule 7004(d): "The

summons and complaint and all other process except a subpoena may be served anywhere in the United States." FED. R. BANKR. P. 7004(d).

Methane argues the Court lacks personal jurisdiction because it has no contacts with the forum state of Kentucky. Methane's arguments are misplaced. It is Methane's contacts with the United States that are pertinent to the personal jurisdiction analysis, not its contacts with Kentucky. *See United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993) ("In an action where service of process is effected pursuant to a federal statute which provides for nationwide service of process, the strictures of *International Shoe [Co. v. State of Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)], do not apply."). *See also Gonzales v. Miller (In re Texas Reds, Inc.)*, No. 7-04-15995 JS, Adv. No. 09-1132 J, 2010 WL 171112, at *4 (Bankr. D.N.M. April 26, 2010) ("[W]here the Bankruptcy Court has federal subject matter jurisdiction over the adversary proceeding, such defendants are subject to personal jurisdiction."). There is no question that Methane has sufficient contacts with the United States as a company that operates within its territorial boundary.

The Court has subject matter jurisdiction, Alliance properly served the Enforcement Motion on Methane, and that service is consistent with the Fifth Amendment. The Court has personal jurisdiction over Methane to resolve whether publication notice of the Sale and Confirmation Orders satisfied constitutional due process as to Methane.

**C. The Court Will Not Abstain from Addressing the Constitutional Due Process Issues.**

Methane next argues that even if the Court has subject matter and personal jurisdiction, it should exercise mandatory or permissive abstention.

A bankruptcy court either *must* abstain from hearing a state law claim, 28 U.S.C. § 1334(c)(2) (mandatory abstention), or *may* abstain from hearing a state law claim, 28 U.S.C. § 1334(c)(1) (permissive abstention). Mandatory abstention is only applicable in proceedings where the bankruptcy court has "related to" jurisdiction. 28 U.S.C. § 1334(c)(2). That is not the case here. But the Court may exercise its discretion and permissively abstain from hearing this matter as a proceeding that "arises in" a case under title 11. 28 U.S.C. § 1334(c)(1); *see also Lowenbraun v. Canary (In re Lowenbraun),* 453 F.3d 314, 320 (6th Cir. 2006).

Methane urges the Court to permissively abstain because the underlying dispute is between two non-debtor parties based on their state law property rights. But it is not necessary to delve into the state law issues to address whether Methane received constitutional due process of Debtors' asset sale, plan confirmation and the resulting Sale and Confirmation Orders. Further, permissive abstention is not appropriate where the issue is the adequacy of notice of the Court's own orders. *See In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 471 B.R. 331, 337-38 (Bankr. S.D.N.Y. 2012). Accordingly, the Court declines to abstain from resolving the constitutional due process issue.

**II. Alliance's Enforcement Motion**.

Preliminarily, whether the Sale and Confirmation Orders could affect Methane's Interest depends on whether Debtors satisfied constitutional due process with the notice they provided to Methane. As explained below, this turns on whether Methane was known to Debtor Old Ben. The Bankruptcy record and evidence show that it was.

9

**A. Notice Must be Reasonably Calculated to Apprise Interested Parties of the Action**.

A party seeking relief must provide "notice, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Accordingly, the Bankruptcy Code requires the trustee or debtor-in-possession to provide parties with an interest notice and an opportunity to be heard before their interests are adversely impacted. *See, e.g.,* 11 U.S.C. § 363(b), (f) (requiring notice before taking action that will affect an interest in property). The reorganization process depends on parties being properly notified of all vital steps so they may have the opportunity to protect their interests. *Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620, 623 (10th Cir. 1984). A party who fails to receive adequate notice is not bound by the terms of a sale or confirmation order otherwise. *Elliott v. Gen. Motors LLC* (*In the Matter of Motors Liquidation Co.*), 829 F.3d 135, 158-161 (2d Cir. 2016) (sale order); *Dalton Dev. Project #1 v. Unsecured Creditors Comm. (In re Unioil)*, 948 F.2d 678, 683 (10th Cir. 1991) (confirmation order); *Reliable Elec. Co.*, 726 F.2d at 622-23 (confirmation order); *In re Grumman Olson Indus., Inc.*, 445 B.R. at 254 (sale order); *White v. Chance Indus., Inc. (In re Chance Indus., Inc.)*, 367 B.R. 689, 708 (Bankr. D. Kan. 2006) (confirmation order); *In re Arch Wireless*, 332 B.R. 241, 251 (Bankr. D. Mass. 2005) (confirmation order); *In re CareMatrix Corp.*, 306 B.R. 478, 487 (Bankr. D. Del. 2004) (confirmation order).

A debtor, or in this case its successor-in-interest Alliance, has the burden to prove that notice is sufficient. *See In re Unioil*, 948 F.2d at 683; *In re Arch Wireless*, 332 B.R. at 254-255. Whether a party received adequate notice is a fact-specific inquiry and depends on the totality of

10

the circumstances.  *In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 471 B.R. at 339; *DePippo v. Kmart Corp.*, 335 B.R. 290, 295 (S.D.N.Y. 2005).  Because a debtor controls who gets notice, it is a debtor's knowledge that also controls whether a debtor has a duty to give notice and the nature of that notice.  *See In re Arch Wireless*, 332 B.R. at 255.  Hence, "reasonable notice" depends on whether a party is "known" or "unknown" to a debtor.  *DePippo*, 335 B.R. at 295.

A "known" party is one "whose identity is either known or 'reasonably ascertainable by the debtor.'"  *Id*. at 296 (quoting *Tulsa Prof'l Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988)).  A party's identity is reasonably ascertainable if it can be identified through reasonably diligent efforts.  Such efforts do not require impracticable or extended searches, but they do require a careful examination of a debtor's own books and records.  *Id.*  In contrast, a party is "unknown" if its interests are "'either conjectural or future, or although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor].'"  *Id.* (citing *Mullane*, 339 U.S. at 317.)  The distinction between "known" and "unknown" is important because actual notice is required if the party is known, but constructive notice, such as by publication, may be sufficient if a party is unknown.  *DePippo*, 335 B.R. at 295-96; *In Matter of Motors Liquidation Co.*, 829 F.3d at 159 (quoting *Schroeder v. City of New York*, 371 U.S. 208 (1962)).

Alliance argues the size and complexity of a bankruptcy case should be considered as part of the due process analysis.  But size and complexity of a case, or the need for expediency, are not factors in the due process analysis.  *See, e.g., Motors Liquidation Co.*, 829 F.3d at 161 ("Due process applies even in a company's moment of crisis."); *Tulsa Prof'l Collection Servs.*,

*Inc. v. Pope*, 108 S. Ct. 1340, 1347-48 (1988) (actual notice is still required despite a pressing need to proceed expeditiously).

### B. Notice by Publication on Methane Did Not Satisfy Constitutional Due Process as to Methane.

There is no dispute that the only notice provided to Methane prior to entry of the Sale and Confirmation Orders was notice by publication. Alliance argues this is sufficient to satisfy constitutional due process. Although Alliance carries the burden of proof, it did not introduce any evidence to support its position. Rather, Alliance relies solely on *Giese v. Cmty. Trust Bank, Inc. (In re HNRC Dissolution Co.)*, 549 B.R. 469 (Bankr. E.D. Ky. 2016), *aff'd sub nom.*, *Giese v. Lexington Coal Co. (In re HNRC Dissolution Co.)*, Case No. 16-8013, 2018 WL 2453104 (B.A.P. 6th Cir. June 1, 2018), to support its argument that Methane is not a "known" party and notice by publication on Methane satisfies constitutional due process. In contrast, Methane relies on the Bankruptcy record, the DeMier Affidavit, and the Methane Exhibits in support of its argument that Old Ben knew or should have known of its Interest and provided it actual notice of the Sale and Confirmation Orders.

On a very basic level, how could Old Ben not have known about Methane's Interest? Old Ben knowingly entered into a transaction with Methane that is memorialized in the Old Ben Deed. This was a direct relationship between Old Ben and Methane, not an association by chance.

Regardless, Old Ben should have known of Methane's Interest because it was reasonably ascertainable from its records. According to the DeMier Affidavit, on June 12, 1998, Illinois Minerals LLC and Methane paid Old Ben $2,600,000.00 for all of Old Ben's oil and gas rights and all of its methane gas rights associated with the coal, shale, and non-oil formations, in the

12

Illinois Counties of Franklin, Hamilton, Jackson, Jefferson, Williams, Macoupin, and Madison, as well as Pike County, Indiana. Debtor Fairview Land Company, an affiliate of Old Ben, was also a grantor on the Old Ben Deed. Methane's Interest was created as a part of this significant and sizeable transaction. Alliance's counsel conceded at the March 28 hearing that the $2,600,000.00 transaction was recorded in Old Ben's records. It reasonably follows that Methane's Interest was included as well. Further, there is no dispute that the Old Ben Deed, which includes reciprocal covenants in favor of and against Old Ben, was recorded in the land records of Hamilton County, Illinois around the same time.

In the fall of 1998, and less than 90 days after the $2.6 million dollar sale of oil and gas rights and execution of the Old Ben Deed, Old Ben was involved in another substantial transaction by which AEI Resources Inc. acquired Ziegler Coal Holding Company, which wholly owned Old Ben. The Securities and Exchange Commission filings show that this was also a substantial transaction. Due diligence in connection with the transaction would have included a review of Old Ben's records. Old Ben filed bankruptcy less than five years later in November 2002. Considering Methane's Interest was included in Old Ben's records and the Hamilton County land records, and undeniably reviewed as part of the parties' due diligence in the significant acquisition that followed shortly thereafter, Debtor Old Ben and its parent, Debtor Zeigler Coal Holding Company, should have ascertained Methane's Interest through the process of reviewing their own records.

The Bankruptcy record likewise supports a finding that Old Ben would have known of Methane's Interest if it had conducted a diligent review of its records. Exhibit G attached to the Notice of Order Granting the Debtors' Motion for Order Establishing Claims Bar Date and Approving Form of Notice of Bar Date [ECF No. 1062-34, at 29 of 50] references the Hamilton

13

County Treasurer. This shows that Old Ben was aware there were interests in Hamilton County that may be impacted by the Bankruptcy. This knowledge should have triggered further review to determine the kinds of interests located there. A reasonable review of those records would have revealed Methane's Interest. Further, attached to the Debtors' Report of Sale on Auction of Substantially All of the Debtors' Operating Assets is a schedule that references an "easement/right of way" in Williamston, Illinois, between Illinois Methane, LLC "as lessee" and Fairview Land Company. [ECF No. 3824-4, at 24 of 35.] Fairview Land Company is also a grantor on the Old Ben Deed. [*Id.*] The information on Methane's Interest was readily available to Old Ben.

The Bankruptcy record, in addition to the circumstances surrounding the Old Ben Deed and the events that followed, show Old Ben, its affiliate Fairview Land Company, and its parent Zeigler Coal Holding Company, all would have known of Methane's Interest upon conducting a diligent search. Methane's Interest was reasonably ascertainable by Old Ben, making Methane a "known" party entitled to actual notice of the sale and confirmation process. Notice by publication on Methane, therefore, did not satisfy constitutional due process.

**C. Alliance's Reliance on *Giese* is Misplaced.**

Rather than introduce evidence to meet its burden, Alliance relies on *Giese v. Cmty. Trust Bank, Inc. (In re HNRC Dissolution Co.)*, 549 B.R. 469 (Bankr. E.D. Ky. 2016), *aff'd sub nom.*, *Giese v. Lexington Coal Co. (In re HNRC Dissolution Co.)*, Case No. 16-8013, 2018 WL 2453104 (B.A.P. 6th Cir. June 1, 2018), a case decided by this Court that also involves the Sale and Confirmation Orders. *Giese* is distinguishable on its facts.

In *Giese*, a bank holding certain account funds was unable to determine the rightful owner of the funds following the sale of the Debtors' assets in bankruptcy, so it filed an

interpleader adversary proceeding in this Court seeking a determination of the rightful owner. One of the defendants named in the interpleader action was "E. Begley," a person described as an unknown claimant referred to on the business account agreements. The bank maintained that after a diligent search and inquiry, it was unable to determine E. Begley's whereabouts or full name and sought leave to serve E. Begley by publication. The Court granted the bank's request in compliance with applicable law and the bank served E. Begley by publication in a form and manner approved by the Court. Default judgments were subsequently entered against E. Begley and all other defendants except two. The remaining two defendants ultimately divided the funds. 549 B.R. at 477.

Several years later, an alleged heir of E. Begley filed a state court lawsuit claiming an interest in the funds. *Id*. The alleged heir named as defendants the bank and the two defendants from the interpleader action that received the account funds. The defendants removed the matter to federal district court. The federal district court determined jurisdiction was proper and referred the matter to this Court. *Id*. at 478-479. This Court determined that some of the claims failed to state a claim upon which relief can be granted whereas others were barred by *res judicata*. *Id.* at 473. In so deciding, this Court made a finding that the "Sale Order entered in the Horizon Bankruptcy is good against the world, including Plaintiff, and Plaintiff may not collaterally attack this Court's final Sale Order." *Id.* at 480. This Court also held as part of its *res judicata* analysis that there was a full and fair opportunity to litigate the claims in the sale process because notice by publication on E. Begley was appropriate. *Id*. at 482 ("Notice was reasonably calculated under the circumstances to apprise interested parties of the sales/confirmation process and an opportunity to object. Due process has been satisfied."). Alliance asserts the same is true in this case as well.

15

Alliance's attempts to draw similarities between this case and *Giese* are unpersuasive. There is no question that the Bankruptcy sale was an *in rem* proceeding and the Sale Order is generally good against the world. But that is not true where notice is insufficient and due process is not satisfied. *See South Motor Co. of Dade Cnty. v. Carter-Pritchett-Hodges, Inc. (In re MMH Auto. Grp., LLC)*, 385 B.R. 347, 358 (Bankr. S.D. Fla. 2008) ("To accept [this] argument would be to acknowledge that, without exception, a person's property rights can be compromised with no notice and no attempt at notice of such compromise, so long as a moving party is successful in getting a final judgment," which flies in the face of the Due Process clause of the United States Constitution).

Further, the identity and whereabouts of E. Begley were unknown, making notice by publication appropriate:

> Community Trust had no knowledge of the identity or whereabouts of E. Begley. Any interest in the Account held by the non-leasing heirs flowed from "E. Begley." How else would those who might have an interest in the Account be served other than by publication directed to the only name other than Leslie Resources associated with the Account? This is the very purpose of service by publication.

*Giese*, 2018 WL 2453104 at *9. That is not the case here. Alliance has the burden of proof and has provided no evidence to support a finding that Old Ben did not know the identity or whereabouts of Methane. Methane's evidence shows otherwise.

Unlike the facts in *Geise*, a review of Old Ben's records or the Hamilton County land records would have revealed Methane's Interest. Upon identification, actual notice could have easily been provided to Methane via its registered agent (identified in the Old Ben Deed) located at the same mailing address (also identified on the Old Ben Deed), whose contact information

remained unchanged since 1998. *Giese* is factually distinguishable and does not support Alliance's position.

### D. The Confirmation and Sale Orders Have No Affect on Methane's Interest.

Alliance asks the Court to enjoin Methane from litigating any claim arising from Methane's Interest because it acquired the Reserve pursuant to the Sale and Confirmation Orders free and clear of Methane's Interest and without liability for it. The Sale and Confirmation Orders may only enjoin Methane if Methane received notice of them sufficient to satisfy constitutional due process. Simply stated, Alliance had the burden of proof to show that Methane was an unknown party such that notice by publication was sufficient to satisfy due process. It did not meet its burden. Thus, Alliance's requested relief cannot be granted. *See In re Motors Liquidation Co.*, 529 B.R. 510, 577-82 (Bankr. S.D.N.Y. 2015), *aff'd in part, vacated in part, rev'd in part sub nom.*, *Elliott v. Gen. Motors LLC* (*In the Matter of Motors Liquidation Co.*), 829 F.3d 135 (2d. Cir. 2016) (parties who did not receive due process are not bound by the sale order).

This conclusion fully resolves the Enforcement Motion. It is therefore unnecessary for the Court to address the nature of Methane's Interest and the other issues raised by the parties.

### ORDER

Based on the foregoing, it is ORDERED that Methane's Jurisdiction Motion [ECF Nos. 8542 & 8553] and Alliance's Enforcement Motion [ECF No. 8541] are DENIED.

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Tracey N. Wise*
**Bankruptcy Judge**
Dated: **Monday, June 11, 2018**
(tnw)